

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00275-CV

**IN THE INTEREST OF E.J.C.**, S.R.C., and E.D.C., Children

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA00862
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: October 23, 2019

AFFIRMED

Dad appeals the trial court's order terminating his parental rights to his children E.J.C., S.R.C., and E.D.C.[i] Dad asserts the evidence was legally and factually insufficient to support the trial court's best-interests-of-the-children findings. We affirm the trial court's order.

### BACKGROUND

On October 16, 2017, the Department of Family and Protective Services received a report alleging neglectful supervision and physical abuse of the children. The Department investigated and found the home was dirty, smelled of animal waste, and had no electricity or water service.

The children were removed and Dad was placed on a service plan. Dad did not complete his ordered services. After a two-day bench trial, the trial court found by clear and convincing

---

[i] To protect the minors' identities, we use aliases for Appellant and the children. *See* TEX. R. APP. P. 9.8.

evidence that Dad's course of conduct met Family Code section 161.001(b)(1)'s grounds (D), (O), and (P), and terminating Dad's parental rights was in the children's best interests. Dad appeals.

## EVIDENCE REQUIRED, STANDARDS OF REVIEW

The evidentiary standards[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[3] and factual[4] sufficiency standards of review. We apply them here.

## BASES FOR TERMINATING DAD'S PARENTAL RIGHTS

### A. Dad's Course of Parental Conduct

Dad does not challenge the trial court's findings that Dad's course of conduct met statutory grounds (D),[ii] (O), and (P). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (O), (P).

### B. Best Interests of the Children

Dad challenges the sufficiency of the evidence for the trial court's finding that terminating his parental rights is in his children's best interests. *See id.* § 161.001(b)(2). The Family Code statutory factors[5] and the *Holley* factors[6] for best interests of the children are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interests of the children.

### C. Witnesses at Trial

In a two-day bench trial, the trial court heard testimony from Alicia Limon, the Department case worker, and Dad. The trial court also heard from the children's attorney ad litem. The trial court was the "sole judge[] of the credibility of the witnesses and the weight to give their

---

[ii] "[D]ue process requires an appellate court to review and detail its analysis as to termination of parental rights under section 161.001(b)(1)(D) or (E) of the Family Code *when challenged on appeal*." *In re Z.M.M.*, 577 S.W.3d 541, 543 (Tex. 2019) (emphasis added). Dad does not challenge ground (D), and we do not address it. *See id.*

testimony." *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *cf. In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). The trial court heard the following testimony.

**D.      Evidence of Best Interests of the Children**

The Department removed the children from the home because of the condition of the home and because of illegal drug use by Dad and his sister who lived in the home. Mom was not living in the home. The home was dirty, reeked of animal waste, and had no water or electricity service.

Dad sometimes had his then-girlfriend Kelly watch the children. Dad's arguments with Kelly sometimes "got physical" in front of the children. Dad knows Kelly suffers from mental health issues, and after he learned Kelly was using illegal drugs, he continued to leave the children in her care. Dad knew that leaving the children in Kelly's care endangered the children's physical and emotional well-being, but he and Kelly "were planning on calling it quits anyway." *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (8), (10), (11), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C), (D), (H)).

The oldest child is seventeen years old and is currently placed with the middle child in the same foster-only placement. The oldest child has repeatedly stated a desire to remain in the same placement with the middle child—who is six years younger—even after the oldest child turns eighteen years old. *See Holley*, 544 S.W.2d at 372 (factor (A)).

**E.      Dad's Plan Compliance**

After the children were removed, Dad was immediately ordered to complete services, but he repeatedly failed to comply and was re-referred three more times. Dad completed the Compadre Y Compadre course and the drug assessment, but he did not complete the counseling or domestic violence services. Dad did not pay child support, show proof of income, or make his home available for the Department to inspect it to determine whether it was a safe place for the children.

*See* Tex. Fam. Code Ann. § 263.307(b)(8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)).

**F.      Dad's Care for the Children**

Dad was using amphetamines and methamphetamines while the children were in his care. He knew his then-girlfriend Kelly was using illegal drugs and had mental health issues that put his children at risk, but he still left the children with her. Dad testified his home now had water and electrical service, but the Department was unable to confirm that. Dad initially denied, but later admitted, that the second time the case worker visited the home to inspect it, he was home, but he denied seeing or hearing the case worker. As a result, the case worker was unable to access the inside of the home to see if it was safe for Dad's young children. *See* Tex. Fam. Code Ann. § 263.307(b)(1), (6), (8), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H), (I)).

**G.      Dad's Behaviors Affecting the Children**

Dad tested positive for methamphetamines and admitted using methamphetamines. He tested positive when the children were removed and several more times during the plan period. On the first day of trial, Dad assured the court he was no longer using drugs and would pass a drug test. Dad took the test, and it showed he was still using methamphetamines. Two different case workers noted that when Dad visited the children his speech was slurred, and he was not interacting with the children. Dad had one year to engage in and complete his ordered services, but he failed to comply with his service plan. *See* Tex. Fam. Code Ann. § 263.307(b)(3), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H), (I)).

**H.      Options, Recommendations**

The two oldest children are placed at Boysville and the youngest is in a foster home. The children's needs are being met, but the Department is still seeking a permanent adoption placement

for all three children. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (2); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)).

The Department case worker and the children's ad litem opined that it would be in the children's best interests for Dad's parental rights to be terminated.

Considering all the evidence under the two evidentiary standards, we conclude the trial court could have formed a firm belief or conviction that terminating Dad's parental rights to his children was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012).

**CONCLUSION**

Because the evidence was legally and factually sufficient to support the trial court's findings by clear and convincing evidence (1) of at least one predicate ground for termination and (2) that termination of Dad's parental rights is in the best interest of each child, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[1] <u>Clear and Convincing Evidence</u>. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code, and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[2] <u>Statutory Grounds for Termination</u>. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Appellant's course of conduct met the following criteria or grounds:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
> . . . .
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; [and]

(P) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:

(i) failed to complete a court-ordered substance abuse treatment program; or

(ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance.

*Id.* § 161.001(b)(1).

[3] Legal Sufficiency. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

[4] Factual Sufficiency. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[5] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

(1) the child's age and physical and mental vulnerabilities;

(2) the frequency and nature of out-of-home placements;

(3) the magnitude, frequency, and circumstances of the harm to the child;

(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5) whether the child is fearful of living in or returning to the child's home;

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills; . . . and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[6] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

(A) the desires of the child;

(B) the emotional and physical needs of the child now and in the future;

(C) the emotional and physical danger to the child now and in the future;

(D) the parental abilities of the individuals seeking custody;

(E) the programs available to assist these individuals to promote the best interest of the child;

(F) the plans for the child by these individuals or by the agency seeking custody;

(G) the stability of the home or proposed placement;

(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).